**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2988-20

DONALD SERVAIS,

     Petitioner-Respondent,

v.

OCEAN WHOLESALE
NURSERY, LLC,

     Respondent-Appellant.

_____

Argued June 8, 2022 – Decided July 14, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2018-28453.

John H. Geaney argued the cause for appellant (Capehart & Scatchard, PA, attorneys; John H. Geaney and Dana M. Gayeski, of counsel and on the briefs).

Victoria S. Kavanagh argued the cause for respondent (Kavanagh & Kavanagh, LLC, attorneys; Victoria S. Kavanagh, on the brief).

PER CURIAM

Ocean Wholesale Nursery LLC (the Nursery) appeals from an order denying its motion to dismiss Donald Servais's workers' compensation petition and from a final judgment awarding petitioner Servais $75,516. Because the compensation judge erred in denying the motion to dismiss, we reverse the order denying the motion to dismiss and vacate the final judgment.

I.

The Nursery grows and sells landscaping materials. Petitioner worked for the Nursery for approximately five years. He was a nursery manager. On January 31, 2017, the parties entered into a "CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE" (the Agreement). In the Agreement, the parties stated they had "concluded their business relationship" and "wish[ed] to amicably resolve any and all disputes between them, and [were] entering into this Agreement for the purposes of settling, compromising and resolving any and all claims that [petitioner] has or may have against the [Nursery] . . . ."

In consideration of petitioner entering into the Agreement "and in full and complete satisfaction of any and all of his actual and potential claims against the [Nursery]," the Nursery agreed to pay him $5,000. In paragraph five of the Agreement, petitioner agreed that consideration would "constitute the entire

2

amount of consideration provided to him under this Agreement" and agreed he would "not seek any further compensation for any other damages, costs, disbursements or attorneys' fees in connection with any of the matters encompassed by this Agreement, any aspect of his relationship with the [Nursery], or otherwise." Petitioner also "acknowledge[d] and agree[d] that, as of the date he sign[ed] this Agreement, he ha[d] been properly paid for all work performed for or on behalf of the [Nursery] and ha[d] not sustained any work-related illness or injuries for which he ha[d] not already filed a claim."

In paragraph six of the Agreement, petitioner released the Nursery from "any and all actual or potential claims, charges, demands, actions or liabilities of any kind, known or unknown, which have arisen, or which may arise, by any reason whatsoever on or before the date upon which [petitioner] signs this Agreement . . . ."

Paragraph seven of the Agreement is entitled in bold "Exceptions." It provided:

> The release contained in [p]aragraph [six] above does not affect or limit: (i) claims that may arise after the date [petitioner] signs this Agreement; (ii) [petitioner's] right to enforce this Agreement; (iii) [petitioner's] right to receive benefits for occupational injury or illness under the Workers' Compensation Law, or (iv) any other claims that, under controlling law, may not be released by private agreement.

3

More than twenty months after he had signed the Agreement in which he represented he had not sustained any work-related injury for which he had not already filed a claim, petitioner on October 17, 2018, filed an employee claim petition with the Division of Workers' Compensation. In the petition, petitioner alleged he had experienced an injury of "right hand three finger amputation" while "cutting pallets" on January 26, 2016, more than two years and eight months before he filed the petition.[1]

On January 18, 2019, the Nursery moved to dismiss the petition with prejudice for lack of jurisdiction, arguing petitioner had failed to file a claim within the two-year statutory period under N.J.S.A. 34:15-51. The Nursery included in its motion a copy of the Agreement. The Nursery contended the Agreement "did not in any way limit petitioner's right to file a workers' compensation claim against . . . [the] Nursery" and that even though the "Agreement made clear to petitioner that he could bring a workers' compensation claim against [the Nursery], petitioner failed to file any claim petition within the statutory period under N.J.S.A. 34:15-51." The Nursery also asserted petitioner was an independent contractor, not an employee.

---

[1] In his initial petition, petitioner stated the accident had occurred on January 28, 2016. In an amended petition, he corrected the date to January 26, 2016.

A-2988-20

Petitioner opposed the motion with a letter brief from his counsel. Asserting he had been "misled into believing that he was receiving payment on his workers' compensation claim which was executed on January 31, 2017," petitioner contended his claim was timely because he had filed it within two years of executing the Agreement. Petitioner did not support that assertion with an affidavit or certification regarding, for example, any misleading statement made to him. Instead, his counsel relied exclusively on purportedly ambiguous language in the Agreement, arguing paragraphs five and six of the Agreement "would reasonably lead [p]etitioner into believing that the $5,000[] was also a partial payment for his severe work related injury."

Instead of reviewing the Agreement and making a finding as to whether it was ambiguous as petitioner had argued, the judge of compensation conducted a four-day hearing, during which petitioner, the Nursery's owner, and the Nursery's former general manager testified. At the outset, counsel for the Nursery stated, "all issues remain in dispute including employment and arising out of and during the course of employment," but that because the statute-of-limitations issue was jurisdictional, the Nursery was prepared at that time to proceed "solely on its [m]otion to [d]ismiss for [l]ack of [j]urisdiction." Petitioner's counsel agreed to those stipulations and argued the payment made

pursuant to the Agreement "represented an unlawful settlement as it was not approved by a judge of compensation" and "would have tolled the statute for another two years under our law if it is deemed a payment." The judge confirmed questioning was limited to "the agreement and the date it was signed and the date he got a payment."

After the four-day hearing ended, the compensation judge placed a decision on the record denying the Nursery's motion. The judge recognized filing a workers' compensation claim concerning a January 26, 2016 injury on October 17, 2018, "under normal circumstances, would have exceeded the [s]tatute of [l]imitations by almost nine months and would have resulted in this [j]udge granting the [Nursery's] motion for dismissal."

The judge found that because the Nursery's attorney had prepared the Agreement, "any ambiguity should be construed against the [Nursery] and for the [p]etitioner." The judge posited section (i) of paragraph seven, which excluded from the Agreement "claims that may arise after the date [petitioner] signs this Agreement," might "lead . . . [p]etitioner to believe that any incidents that arose before he signed this [A]greement were included therein." The judge faulted section (iii) of paragraph seven, which excluded "[petitioner's] rights to receive benefits for occupational injury or illness under the Workers'

6

Compensation law," for "not mention[ing] a traumatic injury, which [p]etitioner surely suffered." He found that omission to be "ambiguous and misleading." The judge also stated the Agreement "[n]owhere . . . seek[s] to address the loss of parts of three of the [p]etitioner's fingers," "[i]nform[] him of his right to file a [w]orkers' [c]ompensation claim and his inability to waive same," or "specify or address" the out-of-pocket expenses related to the use of his truck and equipment for which petitioner was seeking reimbursement.

The judge concluded he could "only assume [the Agreement] included any and all claims, including the loss of [petitioner's] fingers." The judge held the $5,000 payment made pursuant to the Agreement "included the fingers, and thereby extended the [s]tatute of [l]imitations." Even though the hearing had been limited to the Agreement and the statute-of-limitations issue, the judge also held petitioner was an employee of the Nursery and had lost his fingers at work and not at home. The judge issued an order on February 18, 2020, denying the Nursery's motion to dismiss and finding petitioner was an employee of the Nursery and his injury had "ar[isen] out of and in the course of his employment."

Following the compensation judge's decision denying the motion to dismiss, the parties proceeded to a trial regarding petitioner's injuries, the extent

A-2988-20

of any disability, and the permanency of his impairment. The trial was based on petitioner's testimony and medical and expert reports.

In a decision placed on the record, the judge held the accident had caused petitioner to suffer a permanent disability and awarded petitioner $75,516. The judge found the $5,000 payment pursuant to the Agreement had included $1,000 for the loss of petitioner's fingers. When asked to explain his determination that $1,000 of the $5,000 payment was for the loss of petitioner's fingers, the judge stated: "In other words, of the $5,000 agreement, I have assigned $1,000 to the fact that he lost his fingers. So that's a credit to the [Nursery]." The judge provided no other explanation and no factual support for his finding. The judge memorialized his decision in a final judgment, ordering, among other things, that the Nursery was "entitled to a $1,000[] credit for the portion of the payment petitioner received pursuant to the . . . Agreement . . . and which this court has deemed a payment of compensation within the meaning of the Worker's Compensation Act . . . ."

The Nursery moved for a stay of the judgment pending appeal. The Nursery argued the judge had erred in extending the statute of limitations, in deciding the employment and compensability issues based on the first limited hearing, and in arbitrarily assessing $1,000 of the $5,000 payment "for a never

discussed workers' compensation payment," for which "no evidence was entered into the record regarding any apportionment and no testimony was elicited regarding apportionment." In a decision denying the motion, the judge rejected the Nursery's argument regarding the arbitrariness of his allocation of $1,000 to the loss of petitioner's fingers, finding "[t]he [A]greement for $5,000 supposedly just for separation of [p]etitioner from . . . [the] Nursery is against public policy and [it] would be a tragedy to allow it to stand . . . ."

On appeal, the Nursery argues the compensation judge erred by (1) misconstruing the $5,000 "employment separation payment" as a worker's compensation payment; (2) violating the Nursery's due-process rights by determining petitioner was an employee and that he had been injured in the course of his employment without holding a proper trial on those issues; and (3) arbitrarily apportioning the $5,000 payment into a $4,000 employment separation payment and a $1,000 work injury payment.

II.

Settlement agreements are "governed by basic contract principles, . . . and, 'absent a demonstration of "fraud or other compelling circumstances,"' a court should enforce a settlement agreement as it would any other contract." Capparelli v. Lopatin, 459 N.J. Super. 584, 603-04 (App. Div. 2019) (quoting

Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005)). "'[C]ourts should discern and implement the intentions of the parties[,]' and not 'rewrite or revise an agreement when the intent of the parties is clear.'" Id. at 604 (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid. (quoting Quinn, 225 N.J. at 45).

A court should give the parties an "opportunity to illuminate the contract's meaning through the submission of extrinsic evidence" only if the contractual language is ambiguous. Ibid. "To the extent that there is any ambiguity in the expression of the terms of a settlement agreement, a hearing may be necessary to discern the intent of the parties at the time the agreement was entered and to implement that intent." Ibid. (quoting Quinn, 225 N.J. at 45).

"Interpretation and construction of a contract is a matter of law for the court subject to de novo review." Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 190 (App. Div. 2008) (quoting Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998)); see also Capparelli, 459 N.J. Super. at 605. "[W]e accord no special deference to a trial court's interpretation of an agreement entered into by the parties." Capparelli,

459 N.J. Super. at 605; see also Hager v. M&K Constr., 246 N.J. 1, 13 (2021) (holding in a workers'-compensation case, "we review the court's legal findings and construction of statutory provisions de novo").

The Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -147, provides a time-bar for claims seeking compensation in connection with a work-related accident. N.J.S.A. 34:15-51; see also Sheffield v. Schering Plough Corp., 146 N.J. 442, 453 (1996). An employee seeking compensation under the Act for injuries sustained in a work-related accident must submit a petition to the Division of Workers' Compensation "within two years after the date on which the accident occurred" unless the employee and employer already "effected" a settlement of the employee's claim. N.J.S.A. 34:15-51. If "a part of the compensation has been paid by the employer," the employee must file the claim "within two years after the last payment of compensation . . . ." Ibid. The two-year statute of limitations will toll if "the total pattern of conduct [of an employer] would be likely to lull an injured employee into a false sense of security which may cause him [or her] to fail to file a timely petition." Witty v. Fortunoff, 286 N.J. Super. 280, 284 (App. Div. 1996).

In Sheffield, 146 N.J. at 453-55, the Court held an employer's provision of medical treatment for a work-related injury or arrangement of payment for

A-2988-20

that treatment could be considered a "payment of compensation" that delays the running of the statute of limitations. In <u>Witty</u>, 286 N.J. Super. at 282, after several months of receiving medical treatment for a work-related injury paid by his employer's workers' compensation carrier, the petitioner received a letter from the carrier advising him his condition was not related to his work accident and the carrier would no longer pay for his medical treatment. We held the statute ran from the date of the letter, not the date of the accident. <u>Id.</u> at 284.

None of those circumstances was present here. None of them was even alleged in petitioner's opposition to the Nursery's motion to dismiss. In fact, petitioner concedes the Nursery did not provide or pay for any of his medical treatment. His opposition was based entirely on his argument that the Agreement was ambiguous. Reviewing the Agreement de novo, we perceive no ambiguity. The plain language of the Agreement expressly excluded petitioner's workers' compensation claim.

Because petitioner's opposition to the Nursery's motion to dismiss was based entirely on the alleged ambiguity of the Agreement, the judge erred in conducting a four-day hearing before deciding whether the Agreement was ambiguous. After conducting that hearing, he erred in finding the Agreement ambiguous.

12

Contrary to petitioner's argument, paragraphs five and six of the Agreement would not reasonably lead a person to believe that the $5,000 payment under the Agreement was also a partial payment for his work-related injury because paragraph seven of the Agreement, clearly entitled in bold "Exceptions," expressly stated that the release in the Agreement did not "affect or limit" his right to receive benefits for occupational injury under the Workers' Compensation Law. As alleged by petitioner, the loss of his fingers was an occupational injury for which he seeks compensation under the Act. Thus, his claim was clearly and unambiguously excluded under the Agreement. We also perceive no inconsistency between the language of the Agreement and the language of the Act, as argued by petitioner. Compare the Agreement (excluding from the Agreement petitioner's "right to receive benefits for occupational injury or illness under" the Act), with N.J.S.A. 34:15-7 (providing an employee with a right to receive "compensation for personal injuries to . . . [the] employee by accident arising out of and in the course of employment").

The judge's assumption the Agreement "included any and all claims, including the loss of [petitioner's] fingers" is directly contrary to the express language of the Agreement excluding certain claims, including workers' compensation claims. A judge can't "assume" an agreement includes all claims

when it expressly excludes some claims. That section (i) of paragraph seven excluded from the Agreement "claims that may arise after the date [petitioner] signs this Agreement" does not render meaningless the other expressly enumerated exceptions for claims that arose before petitioner signed the Agreement.

The judge's finding that $1,000 of the $5,000 payment of the agreement was payment for petitioner's loss of fingers has no basis in the record evidence. The judge faulted the agreement for not addressing petitioner's loss of his fingers and for failing to inform petitioner of "his right to file a [w]orkers' [c]ompensation claim and his inability to waive same." Yet, in the Agreement, petitioner did not waive his right to file a workers' compensation claim. To the contrary, in the Agreement, petitioner expressly reserved his right to file a workers' compensation claim. He just didn't do so timely.

The Agreement was not ambiguous. It clearly excluded workers' compensation claims and was not a resolution of any workers' compensation claim. Thus, the $5,000 payment under the Agreement was not related to any work-related injury and did not have the effect of tolling the two-year statute of limitations under the Act. Accordingly, we reverse the order denying the motion to dismiss and vacate the final judgment. Because we reverse the order denying

14

the motion to dismiss and vacate the final judgment, we need not reach the Nursery's remaining arguments.

Reversed and vacated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2988-20